Good morning, your honors. May it please the court, John Simpson for the appellant, Seaworld Parks & Entertainment, Inc. I'd like to reserve two minutes for rebuttal. Very well. The result reached by the district court in this case cannot be reconciled with more than 40 years of settled Ninth Circuit precedent. No fewer than 18 public... and the California Consumers Legal Remedies Act. Those are the only three bases, right? Correct. And the appellant is not seeking any review of the rule of...denial of Rule 11 sanctions. Is that correct? Correct. Okay, which of the three do you think is your best shot? I think, with respect to the lawyers, it's a clear-cut case of violation of 1927. Okay, thank you. And I don't think there's any question that the plaintiffs in this case, having perjured themselves at trial, engaged in bad faith. Where did the court find that they had perjured themselves? The court did not make that finding. Okay, well, if...how can we make that finding? Because the court rejected their testimony in its entirety on standing, with respect...because it wasn't credible. That's something that's different than the finding of perjury, counsel. Well, but let me get to the next point. The reason that the testimony was rejected, on credibility grounds, because it was untruthful. And he found that it was untruthful. He found that Morizer was a dissimilar. Morizer lacked candor. Morizer embellished and exaggerated. He found that Nelson's testimony was contrary to the true views that she expressed on social media. And I would submit that those findings of fact, combined with their failure to respond to our attorney's fee motion with an explanation about why this credibility, lack thereof, is a result of an innocent reason, such as mistake, such as lack of memory, such as confusion, some other reason... Well, let me just desk you this. I really do understand why you're upset. I really understand... Him personally? I'm sorry? Him personally? No, I mean, well, maybe him personally, but certainly his client. I mean, this is a long, hard-fought battle. I can understand why you're very, very upset. What I'm struggling with as a judge...here you have the judge who says that part of what they said was true. It's credible. And the district judge in this case concluded that, taking it overall, decided it wasn't appropriate to award sanctions. I'm really struggling without specific findings of fraud and the fact that the court found that there was some evidence that he believed, plus the fact that there was...you said they didn't respond. Well, they referred to what they had said before. Lots and lots of things. So when it gets all done, would I have done it if I were the district judge? I don't know. But that's not what I have to judge. I have to judge whether this judge has abused discretion, and I'm struggling with that. Can you help me with that? Well, first of all, with respect to abuse of discretion, we recognize that that's the standard of review. But I would respectfully refer you to the Parachak opinion where the Third Circuit in the penultimate paragraph said, abuse of discretion sounds worse than it is. What it really sounds worse than it really is. What it boils down to is a definite and firm conviction by the appellate court that the trial court made a mistake. But with respect, counsel, we're in the Ninth Circuit. Correct. And I'm sure those folks in the Third Circuit are really swell. But the reality is we're in the Ninth Circuit, and based on our case law and based upon what the district judge found here, how do we overturn that? They didn't abuse the law. We may have ruled differently, but given what I described before, how do we overturn that? Well, with respect to the plaintiffs, I don't see how there's any difference between what they did in this case and what the defendant did in the Anheuser-Busch case. There was never any finding that she lied, that she committed perjury. The judge rejected her testimony as incredible. Agreed. And then found that that was subjective bad faith. Agreed. But the judge in that case, as I recall, reflected, didn't say that he or she credited part of what was said and believed it. But what didn't get credited here, Your Honor, was the essential facts that they needed to prove for standing. He didn't credit that Morizer had a plush. He didn't credit her testimony that she relied on anything Seaworld said in buying it. He didn't credit her testimony that she'd ever go back. So he didn't credit anything she said that mattered. The only thing he credited about the testimony of Nelson was that she bought the ticket, which, of course, was contrary to the false statement in the complaint, or that her husband did, was contrary to the false statement of the complaint, and that she may have seen some Seaworld material, and it may have been on the website at some point, but she didn't see it when she saw it when she said she saw it, and she didn't rely on it. And then she's not going back either. So, yes, credit some things, but don't credit them. And I think, Your Honor, it's contrary to the reasoning in the Rodriguez case, where the government made essentially the same point. Look at all the good things we did. Counsel, aren't you really arguing that the district court judge made a mistake in the findings of fact? That's really what you're arguing. No, I'm not. Okay. So you're saying that his findings of fact are not in error. Because the district court judge says, based on the record presented in connection with the current motion, the court does not find Seaworld has met its burden to show that counsel acted recklessly with an improper purpose or acted in bad faith. That's only one of his many findings. So you're saying he did not make an error of fact in that conclusion then. So we'll accept that as a fact. His findings of not ñ well, I didn't understand your question. I thought you meant the findings of fact after the trial. There are no errors in those findings of fact. There were no findings of fact, I don't think, in this situation. And as to the lawyers, I would refer, Your Honors, to the Girardi case, where I think those facts are virtually the same, a situation where lawyers proceeded on the basis of an assertion of fact about the effect of a judgment, that the document they proffered to prove that was fundamentally inconsistent on its face, and when they were challenged by the other side, they put words in the mouths of these practitioners. Unfortunately, however, the district court judge made findings, reached certain conclusions. And so if we aren't ñ if we don't reverse those findings, then, you know, I don't think this is really an abuse of discretion case, at least not in the way you're arguing. But if you have clear-cut evidence that the lawyers were aware of the very facts that led to the impeachment of their clients at trial, when they filed the case, at a minimum, at the time they ñ these clients were deposed and we moved ñ For example, each of these three standards that there are three bases that you're trying to seek sanctions, they each have different, you know, standards of proof, et cetera, and requirements. And so, for example, for the inherent power, there's a heightened standard of proof for sanctions, isn't it? And that for these types, there has to be a clear and convincing evidence is required. Isn't that correct? Under the inherent authority, recklessness suffices pursuant to the faint case if it's accompanied by an aggravating factor. And the court here did not find that level of recklessness. Well, but he didn't even address the improper purpose argument, and he said nothing about the fact that the evidence had ñ But it was the improper purpose. In other words, you lost and you didn't seek review of the Rule 11 sanctions. That is when, I suppose, an argument could have been made that the lawsuit was brought for improper purposes on an improper basis. But the district court judge said, well, it's sort of close, but I'm not going to find a violation of Rule 11. And you guys didn't appeal that. So that is the finding. So at least at that point in time, there's no problem. But that Rule 11 decision made no finding that they brought the case for a proper purpose. You could have appealed that decision on Rule 11, but you didn't. But it doesn't preclude a 1927 motion, nor does it preclude ñ A 1927 motion on some of the grounds of which would be on the basis of a Rule 11 sanctions, and you didn't get a Rule 11 sanctions. Can you get 1927 in that situation? Absolutely. That's what happened in the Sahlstrom. Sahlstrom v. Citicorp. That's exactly what happened in that case. Which district was that? That was the United Circuit, a published decision in 1996. All right. Where this court ruled very definitively that the lawyers, even though their conduct had been vetted under Rule 11, that motion was denied, that the court still appropriately sanctioned them under 1927. For items that would have been included in the Rule 11 motion itself. They were already vetted by the Rule 11 motion. That happened in the Chambers case. The district court denied the Rule 11 motion, and that's exactly what Chambers argued. You can't sanction me because the Rule 11 motion was denied. But counsel, as my colleague is pointing out here, I mean, you made each argument that you're doing here in your pleadings to the district judge. You were upset. You pointed out all of the things that were done that were wrong from your perspective, and the judge disagreed and came up with the conclusions that my colleague referred to. We're stuck with the fact that we're a court of appeal. We didn't find the facts. We have to look at what the district court did here. It isn't what we would have done. It's what the district court did after considering all of the arguments that you made. And I'm struggling with how we were supposed to give you the relief you want. He didn't make a legal error, did he? It was a factual error from your perspective. I don't think there's any question he made a legal error. I mean, how is it not a legal error when the cases we cite, all the cases I started to describe at the outset of my argument, were not even mentioned in the opinion? They're all on point. Do they have to be? Well, they have to be at least addressed because what you cited them. I cited them. Let's assume the district judge read them. Does the district court have to say, well, I don't agree with this, this, this, this, and this? But if you have a court that took everything you gave to him, looked at the facts, and came up with a conclusion that, as my colleague said, actually cited the language and concluded there was no such violation. But the standard here was the outcome of this clearly erroneous. Is it illogical? Is it implausible? Is it supported by the record? If you ignore controlling authority, how is that logical? How is that plausible? If you say this doesn't constitute bad faith when virtually identical conduct in the Girardi case did, how is that logical? How does that stand up? What kind of consistency is in that? And the trial court made no effort to deal with any of this. And so I would submit to the discretion of the district court, isn't it? But discretion is not unbridled, Your Honor. You have to apply the law. And I would submit that failure to apply controlling precedent that they've not been able to distinguish is as much a legal error as affirmatively applying the wrong standard. And that's reviewable de novo in this Court. So, in other words, you're saying that if there's – well, isn't there – doesn't each of these three bases for aborting sanctions rest on certain factual findings that have to be made, right? Correct. And he didn't find those. He rejected our – but I would – that's our point. It's clearly erroneous. When you have clear-cut evidence. So that would be a factual matter then. It's not a legal matter. It's a factual matter that you're arguing. But it's clearly erroneous to find that it's not bad faith if you rejected the witness's testimony because it wasn't truthful. And when they gave – were given – Well, he didn't say it wasn't truthful. He said that he didn't find certain portions credible. Now, there could be various reasons that testimony is not credible. In other words, when a person is very young and then testifies later on that, oh, they remember everything, you know, that might not necessarily be credible to a trier fact. Well, except he found as a fact that Morizer lacked candor. And I just think that's – Lack of candor does not necessarily mean untruthfulness. I respectfully disagree. I think lawyers are sanctioned all the time for not having candor to the tribunal, and it's not considered a good thing. Well, that's the difference. Because it's deceptive. It's deceptive, and it's not truthful. All right. Do you want to save the balance of your time, counsel? Yes, Your Honor. Whatever you'd like. I mean, it's – Yes. Very well. All right. Let's hear from counsel for Ms. Morizer. May it please the Court, Christine Haskett from Covington & Burling, on behalf of the appellees Juliette Morizer and Kelly Nelson. Can I just say something, counsel? What I just said about the law is how I feel we're bound. But I've got to express real disappointment in Covington's actions in this. They may not have been sanctionable, but, boy, you came really close. This was disappointing to me. I actually clerked for Covington & Burling 1,000 years ago back in D.C. days when I was a second-year student. And I was really disappointed. So if you'll just pass it on, you may be one of the powers that be. But please, when you're arguing your case, you've got to be careful about some of this stuff. This was a really close call from my perspective. So maybe you may not have been involved in it at all. I don't know. But for what it's worth, at least this is one judge that was really disappointed by the conduct of counsel in this case. Okay? Your Honor, I appreciate the comments, and I would like to, if I may respond. Please do. Please do. The first point I was going to make was about the standard of review. It sounds like I don't need to belabor that point. The issue before the Court is not, of course, whether Judge White erred. It's whether he abused his discretion or there was no rational basis. I understand from the Court's comments that I don't need to say much further on that point. However, I would like to note that with respect to the arguments that SeaWorld makes about what happened below, an examination of the record does show that the events below transpired very differently from the way that SeaWorld portrays them in its briefing. First of all, with respect to Ms. Nelson's testimony, SeaWorld argues that her testimony was given in bad faith because she testified that she would return to SeaWorld, and the judge found that her true views were that she would never return. However, there was evidence in the record below that after the trip to SeaWorld at issue, she did, in fact, return to SeaWorld. She went to SeaWorld in 2018 to see if anything has changed, and that in itself would tend to show no bad faith. Absolutely. Let me ask you this. I view this as you were trying to do good stuff from your perspective, but what does it in the settlement demand for an ORCA to be released? What the heck does that have to do with the alleged basis of the original complaint? Well, first of all, we pretty quickly dropped that. I know, but you asked for it, so I might just say, what possible relevance other than I'm trying to protect the ORCA's, which I think was the underlying basis of this in the first place, why would you even ask for that? Isn't that over the top? We put it forward as a proposal where we thought our client organization and SeaWorld perhaps could work together to decide if there were better ways to keep these animals. We thought if SeaWorld claims to be committed to conservation, and we put it forward as a proposal where we thought maybe SeaWorld and our client could actually come together and do the right thing for these animals. Can you understand why I'm troubled by that, though? I understand why you're troubled by it, given the way that SeaWorld portrayed it in its briefing, but we really did put it forward in an effort to try to come up with a creative proposal that was directed towards conservation purposes for these animals. It wasn't, you know, nobody was going to make money off of this ORCA. It was a conservation-based. SeaWorld reacted very badly to it, and we dropped it. The reason, and this is in the record, and I think Judge White dealt with it in his opinion, the reason, part of the reason the settlement discussions fell apart is that plaintiffs rejected what were fairly substantial monetary offers because there wasn't an offer by SeaWorld to fix their advertising, a concrete offer to fix their advertising, and that's, in the end, why it fell apart. The conservation issues went by the wayside because it became very quickly formed. Wasn't that really the genesis of the case in the first place? The advertising? Yeah. In other words, you were trying to do good things to these animals from your perspective. That was the genesis of the case, right? Well, the genesis of the case was that SeaWorld makes representations on its website about the ORCAs that are not true, and in settlement, we wanted them to fix that. We wanted them to fix it and to acknowledge that the statements they'd made about the ORCAs were not true, and that was the point of the suit was that they had to be truthful about how these ORCAs survived. And when you, that was your objective, and yet when the standing issue came up, you basically conjured these people, right? Well, we had people who felt that they had been misled by SeaWorld. Didn't you search for them? Wasn't there even a website or something like that searching for people? We looked at Yelp reviews, and we found a Yelp review from Ms. Nelson in which she said that she had gone to SeaWorld and what she saw at SeaWorld was very different from what SeaWorld said it stood for. And to us, that was a description by her that she felt that she had been misled by SeaWorld, and so she brought a claim against SeaWorld. Ms. Nelson and Ms. Morazor, yes, they were not happy with the way that they felt they had been treated at SeaWorld, and yes, we did find those people and bring them to SeaWorld. Were they really concerned about the little dolls and things like that, or was that just a way to try to, if you will, establish standing? Well, Ms. Nelson had bought tickets to SeaWorld and felt that she would not have bought the tickets to go had she known the truth about the park. And Ms. Morazor was 15 when she went, so she didn't pay for her ticket, but she did buy a SeaWorld doll after talking to a trainer, and she testified to that and said that she wouldn't have spent her own 15-year-old money if she had known the truth. When she found out that it wasn't as portrayed, what did she do with the doll? Well, that was a matter of a lot of discussion at trial. Judge White obviously did not credit her explanation. There was a lot of testimony about the fact. I think it was undisputed that she had multiple stuffed orcas, and there was a dog, and the testimony. That's what she testified to. Judge White obviously did not. That's what troubles me. I mean, I get the feeling of your clients. I get that. I really do. There are a lot of people who feel very strongly about it. But the manner in which the plaintiffs were assembled was, let me put it this way. I can see why they're really upset. Lots and lots of fees, lots and lots of time, lots and lots of bad publicity, and from their perspective, this is just made up of hocus-pocus, just nothing. And that's part of what I'm expressing was my concern in this is I get the genuine feeling, but, boy, this is close. It really is. I appreciate the comments, Your Honor. I do. I would like to say that I think Judge White obviously agreed. He ruled against us on standing. But the issue before this court today is whether he abused his discretion in denying sanctions. He sat through, he presided over this case for six years, and he observed the conduct of the parties in counsel very, very closely. He issued detailed findings of fact and conclusions of law, and he found explicitly no bad faith, no recklessness. And he did address improper purpose in his ruling and found no improper purpose. And the issue before this court is not even whether he was right or wrong in doing that, but whether he lacked any rational basis for doing so. Your appointing counsel suggests that in terms of the abuse of discretion standard that, obviously, if you get the law wrong, that can be a basis for reversal. And if I understand the argument correctly, he's saying there are these cases that we cited to the court, which are so clear about 1927 and inherent authority and so on, that the judge did get the law wrong. What's your response to that? Well, the judge, first of all, there are two responses. First, the judge did cite the correct legal standards in his ruling, and he applied those standards. And there are many, many cases that have been cited here, and they are all, frankly, distinguishable. I mean, I think Seaworld's main argument is that the judge found Ms. Morisor not to be credible. And what he said was that she exaggerated and she embellished. And it was well within his discretion to find that that was not bad faith, especially, frankly, when you're talking about somebody very young. But it's on a point that's so essential because the problem in this case has always been the standing aspect of it. And these statements were made in the context of supporting standing, which at least your opponent isn't saying there was never a basis for. And so that is the reason why he is saying that there were statements that clearly are reckless and et cetera, because it was on this key point. Well, the standard for Ms. Morisor is bad faith. And the way the testimony came in is she said she had multiple orcas. She bought one at Seaworld. She didn't have it anymore. Even in the context of that being raised, I mean, this is what initially was brought as class action. She's a class representative. And, you know, your client's really got her memories of a 15-year-old as to what she was told, not insofar as an advertisement, which a lot of people can see, but a one-to-one conversation. And you're using that for purposes of trying to get standing. I believe Judge White's main problem with her credibility was over what happened to the orca, not so much what she was told. The orca doll. Correct. Correct. I'm sorry. Not so much what she was told. I mean, obviously proving standing in these cases is not that easy. You have to show that you have expended money based on misrepresentations and you've been injured, meaning that you would return, right? There are several boxes that have to be checked. In terms of the class, the reason the class allegations were dropped. Didn't your client know of her embitteredness at the time she was initially contacted, insofar as whether or not she would ever go back? Well, she said that she would. Particularly, she said, if they changed, I would go back. And that, under the law, is sufficient. She said, if they change what they're doing, I'll go back. And Ms. Nelson, as I said, actually did go back. I mean, the proof is in the pudding on that one. But, yes, I mean, our clients definitely had obviously struggled to meet the standing requirement, and they ultimately didn't meet it. But all I can tell the court is that we pursued this case in good faith. We had clients who felt, genuinely felt, that they had been misled. What's your best argument that, at least under the court's inherent powers to award sanctions, that that standard simply wasn't met here? Well, the inherent authority to impose sanctions has to be based on bad faith by the counsel involved. And the Goodyear case made that clear, did it not? I'm sorry? The Goodyear case made that clear. Yes, Your Honor. And in this case, there was no bad faith. SeaWorld has thrown around a lot of accusations about things like suborning perjury. But when you look at the record, it's not supported. The deposition they point to, the witness was asked why he visited the SeaWorld website, and then he was asked later what he saw on the SeaWorld website. Those are two different questions, and there was no inconsistency in his testimony. So SeaWorld's arguments of bad faith by the lawyers are all based on things like that. But when you look at the record, there's just no support for it. Let's just say hypothetically that the district court said, I find that that was in bad faith. Would you have any way to reverse that at this point if you were the one appealing? I mean, the standard is abuse of discretion. It's a very, very high bar to meet. I mean, as long as there's a rational basis for what the district judge did, that's the end of the inquiry. The district judge has a lot of power, a lot of authority to make that determination, right? Correct. And in this case, always that is the case. But in this case particularly, we're talking about a district judge who presided over this case for six years, multiple motions, all kinds of proceedings. This was very hard fought and accumulating in a bench trial, not even a jury trial. So in this case, the district judge was particularly well-suited to judge the conduct and the motivations of the parties. Let me ask, for purposes of the CLRA, did the district court judge find that the defendant was a prevailing party? I believe they did. Did he actually make the finding? That is a very good question. I believe he did. Assuming for purposes of argument that he did and assuming that even if he were to find that there was some form of bad faith, would he have been mandated to award sanctions? In other words, could he not exercise discretion at that point? At the CLRA, he still has additional discretion beyond that. Even if he makes those findings? Correct. But in this case, he is at least necessarily required to find bad faith on behalf of the parties, and he did not. So under the CLRA, if the district judge said, okay, this is a firm doing pro bono work here, trying to do good stuff, I don't feel like I want to award sanctions under the term of attorney fees. Is that lawful if the CLRA says that the other side is a prevailing party? I believe that is correct. He has to find prevailing party and he has to find bad faith before you would even get to that point. So that was obviously not the focus. Are you thinking there had to be a bad faith filing before they could have been the prevailing party, even though they knocked out all of the standing? No, I'm sorry. They could be the prevailing party, but then he has to find bad faith on top of that in order to award fees under the CLRA. Other questions by either of my colleagues for counsel for Ms. Morazar? Okay. Thank you very much. Thank you, Your Honor. All right, Mr. Simpson, you have some rebuttal time. Thank you, Your Honor. I imagine you have some things you'd like to say. I'd just like to say that from the standpoint of being a practitioner in federal court for 45 years, I'm not apologetic for being indignant about what happened in this case. I mean, in federal court, if you can't come to federal court and expect the truth-finding mechanism to work, whether it's a 12B6 motion, whether it's a Rule 56 motion where the good faith of the lawyers is critical to the operation of the system, then you can't go anywhere to protect your rights. That's why I'm upset about this. Now, my client is a public corporation. They paid upwards of $10 million in legal fees. That's not going to put them out of business. I'm upset about that, though. But why should anyone have to spend that kind of money on a case like this? Counsel says that standing is hard to prove. That's just completely wrong. It's one of the easiest things to prove in federal court. Bad smelling air gives you an injury in fact. But you have to actually sniff the air, and it actually has to stink. Well, but the problem is that the reason why sometimes you don't get an immediate answer is because there has to be some discovery and things of that sort. There has to be these things. And the district court judge made a specific finding insofar as discovery is concerned that there wasn't bad faith in that regard. So, again, you're seemingly arguing that the district court judge made an error of fact. He made a clear error of fact. I don't think there's any way else to put that. And I understand Your Honor's comments about the fact that they were pro bono counsel and this was a so-called social impact case. But I would respectfully suggest that there's no separate standard for pro bono lawyers. There's no separate standard for a social impact case. It doesn't matter. I don't think anybody's taking that position here. But if you're an attorney, whether you're being paid whatever it is or working for free, you're an officer of the court, and you're expected to conduct yourself accordingly. With respect to Mr. Anderson, that entire thing with him was a complete sham. They gave us 60 pages of documents that said these reflect the statements he relied on. We broke them into two exhibits. We showed him Exhibit 28. Exhibit 28 didn't exist at the time that he said he saw it. That was completely false because it on its face was a 2015 document a year after he went to the park. It referred to events that hadn't yet happened. And the other piece, Exhibit 29, he admitted in his deposition that he didn't see that until after the trip when he met with Mark Palmer at Covington and Burling. That's when he saw it. So that from the very beginning was completely a fraud on the court. That never existed. Have you made a complaint to the State Bar? We haven't. Maybe we should. I mean, the point here, I don't want to start World War III here. We could have sued him for abuse of process. We could have filed a complaint with the Northern District Disciplinary Committee or with the California State Bar. All my client wants is to be made whole for having to endure the exercise that they endured in this case. That's it. Any other questions by my colleagues? All right. We thank all counsel on what I said. I said, and I mean it, we recognize the strong feelings that you all have, but we commend you for being part of the system. The system is not perfect. It does what it can, but we certainly hope that everyone will act in good faith and will do their very best to carry out the rule of law. So thank you all. The case just argued is submitted.
judges: THOMAS, SMITH, Wu